People v Wager (2019 NY Slip Op 04786)





People v Wager


2019 NY Slip Op 04786


Decided on June 13, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 13, 2019

109549

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
EDWARD J. WAGER, Appellant.

Calendar Date: May 3, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Rumsey, JJ.


Brian M. Quinn, Albany, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered November 9, 2016, upon a verdict convicting defendant of the crimes of vehicular manslaughter in the first degree (two counts), vehicular manslaughter in the second degree (two counts), aggravated driving while intoxicated and driving while intoxicated (two counts).
On June 20, 2015, Roxanne Opalka (hereinafter the victim) was killed when she was thrown from an all-terrain vehicle (hereinafter ATV) that defendant was allegedly operating while he was intoxicated. Defendant was charged by indictment with two counts of vehicular manslaughter in the first degree, two counts of vehicular manslaughter in the second degree, one count of aggravated driving while intoxicated and two counts of driving while intoxicated. Prior to trial, defendant moved to, among other things, suppress inculpatory statements that he had made to law enforcement officials after the accident. After a Huntley hearing, County Court denied defendant's motion, concluding that defendant was not in custody when he made the statements. Following a jury trial, defendant was convicted as charged and sentenced to concurrent prison terms of 5 to 15 years on each conviction of vehicular manslaughter in the first degree and to lesser concurrent prison terms on the other convictions. Defendant appeals.
Defendant first contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. He specifically argues that there is no evidence satisfying one of the elements of vehicular manslaughter in the first degree under Penal Law § 125.13 (1) — operation of a motor vehicle — because an ATV is not a motor vehicle. He further argues that the evidence was legally insufficient to establish that he was operating the ATV at the time of the accident. Defendant's legal sufficiency challenges are not preserved for our review because defense counsel's motion for a trial order of dismissal was not specifically directed at these alleged errors (see People v Vega, 170 AD3d 1266, 1267 [2019]). Nevertheless, under our weight of evidence review, we must determine whether each element of the crimes for [*2]which defendant was convicted was proven beyond a reasonable doubt (see id.; People v Junior, 119 AD3d 1228, 1229 [2014], lv denied 24 NY3d 1044 [2014]).
"When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Vega, 170 AD3d at 1268 [internal quotation marks and citations omitted]). Defendant was charged with two counts of vehicular manslaughter in the first degree under subdivisions (1) and (3) of Penal Law § 125.13 (counts 1 and 2). A person is guilty of vehicular manslaughter in the first degree under Penal Law § 125.13 (1) "when he or she commits the crime of vehicular manslaughter in the second degree . . . while operating a motor vehicle" with a blood alcohol content (hereinafter BAC) of .18% or more by weight. We must therefore consider defendant's argument that an ATV is not a motor vehicle.
"Our task — as it is in every case involving statutory interpretation — is to ascertain the legislative intent and construe the pertinent statutes to effectuate that intent. As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof. If the words chosen have a definite meaning, which involves no absurdity or contradiction, then there is no room for construction and courts have no right to add or take away from that meaning" (People v Roberts, 31 NY3d 406, 418 [2018] [internal quotation marks, brackets and citations omitted]). "This is particularly important where the definition of a crime is at issue, because courts must be scrupulous in insuring that penal responsibility is not extended beyond the fair scope of the statutory mandate" (id. [internal quotation marks and citations omitted]).
ATVs are specifically excluded by the plain language of the relevant definition of motor vehicle. As relevant herein, the Penal Law defines "vehicle" to include a "motor vehicle," which is further defined in the Vehicle and Traffic Law as "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power, except
. . . [ATVs] as defined in [Vehicle and Traffic Law] article [48-B]" (Vehicle and Traffic Law § 125 [emphasis added]; see Penal Law § 10.00 [14]). This specific exclusion of ATVs from the definition of motor vehicle is further evident from two statutes that contain provisions that would be unnecessary if ATVs were included in the definition of motor vehicle. First, the crime of vehicular manslaughter in the second degree contains separate provisions for incidents that arise from the operation of motor vehicles (see Penal Law § 125.12 [1]) and ATVs (see Penal Law § 125.12 [3]) and, second, the Vehicle and Traffic Law contains a provision specifically providing that ATVs are motor vehicles for the purpose of Vehicle and Traffic Law article 31, which prohibits the intoxicated operation of a motor vehicle (see Vehicle and Traffic Law § 2404 [5]). Thus, we are constrained to conclude that ATVs are not motor vehicles for purposes of the Penal Law. Accordingly, the weight of the evidence does not support defendant's conviction for vehicular manslaughter in the first degree under Penal Law § 125.13 (1) (count 1).[FN1]
Defendant further argues that the verdict was against the weight of the evidence because the People failed to prove beyond a reasonable doubt that he was operating the ATV at the time of the accident. Monica Snedeker, the victim's friend, testified that she and the victim [*3]made plans to meet at Snedeker's home on the evening of the accident. When Snedeker arrived at her home at approximately 9:00 p.m., she noticed that John Hodgson, her then-boyfriend with whom she lived, and defendant had been drinking beer. After the victim arrived, all four — namely, the victim, Snedeker, Hodgson and defendant — sat by a fire and, after each of them had a beer, they drove two ATVs to a nearby restaurant. Snedeker explained that she drove an ATV that belonged to Hodgson with Hodgson as a passenger and that defendant drove the second ATV, which he owned, with the victim as a passenger. The four of them spent approximately one hour at the restaurant, where they drank, talked and danced, before returning to Snedeker's home on the ATVs, again driven by Snedeker and defendant. When they arrived at Snedeker's house before midnight, Snedeker sat by the fire while the victim remained on defendant's ATV talking with defendant about a friend who could do "wheelies" on an ATV and requesting a ride. As Snedeker advised the victim to wait until morning, defendant got on the driver's seat of his ATV without wearing a helmet. The victim told Snedeker not to worry and "threw her helmet off," and defendant drove the ATV up the road with the victim riding as a passenger.
Snedeker testified that she heard the ATV traveling at a high speed for two or three minutes until it went silent. Snedeker said that she "had a bad feeling," so she drove her car up the road to look for the victim and defendant. She drove past a sharp curve in the road, located near the residence of David Winney and Teresa Winney, and proceeded approximately another mile before turning around to return home. She testified that it was raining and dark and that, as she approached the Winney residence, she saw the ATV on its side in the front yard. She then noticed defendant leaning against a pickup truck parked on that property. Snedeker testified that defendant did not answer when she asked him where the victim was and she could not locate the victim. Snedeker explained that, because she did not have her cell phone with her, she stopped a passing truck to ask for help. Brett Sherman stopped and, using his cell phone, Snedeker called 911. Snedeker stated that Sherman found the victim and, when he determined that the victim did not have a pulse, he woke the Winneys. Snedeker drove back to her house to get Hodgson because he knew CPR. Snedeker stated that when she and Hodgson returned to the accident scene, Teresa Winney, who was a nurse, told them that the victim "was gone."
Snedeker's testimony was largely corroborated by Hodgson, who testified that, on the day of the incident, he and defendant went "[f]our-wheeling" while drinking beer. They returned to Hodgson and Snedeker's home at approximately 6:00 p.m. and continued to drink beer. Hodgson confirmed Snedeker's account of the visit that the four made to the restaurant, and he added that each of them consumed at least two beers there before returning home at approximately 11:00 p.m. Hodgson estimated that defendant had consumed about six to eight beers throughout the day, and testified that the victim "wanted to do a wheelie challenge" and asked to drive defendant's ATV. Hodgson stated that defendant and the victim both got on defendant's ATV without helmets and, with defendant driving, began doing wheelies around a pond located on the property. Before Hodgson went into the house to go to bed, he told defendant to park the ATV and to "stay off it," because he was concerned about the likelihood of an accident given defendant's level of intoxication. When Hodgson last saw them, defendant was operating the ATV with the victim as a passenger. Snedeker's testimony regarding events at the scene of the accident was also corroborated by the testimony of numerous witnesses, including Hodgson, the Winneys, Sherman and several first responders.
William Kitts, a Saratoga County Deputy Sheriff, testified that he arrived at the hospital at approximately 2:20 a.m. and interviewed defendant about the incident. Kitts testified that when he asked defendant how fast defendant was going on the ATV, defendant responded by stating "too fast." According to Kitts, defendant further stated that the victim had been with him "on the back" of the ATV. Defendant consented to a blood test and, during the blood draw, defendant requested that Kitts not tell "a couple of Fulton County Sheriffs," whom defendant knew, about the accident and stated, "I'm f***ed, I'm f***ed." Kitts testified that after receiving Miranda warnings, defendant stated — for the first time — that the victim was driving at the time of the accident and, when asked to reconcile that statement with his previous inconsistent statements that he had been driving with the victim as a passenger, defendant responded by stating that, "to be honest, I don't remember."
Frank Lynch, the People's expert witness, testified that, during a rollover of an ATV, a passenger is likely to be ejected earlier than an operator and the operator "will stay with the vehicle longer because [he or she is] holding on to the handlebars." He opined that the victim was the passenger of the ATV based on the manner in which the victim's body impacted the parked truck. Lynch explained that, if the victim were the driver of the ATV, she would have ejected later than the passenger and would probably have landed in front of the truck. He added that the victim's clothing supported his conclusion that she was the passenger — specifically, the back of her jeans were wet, but the front was dry, which indicated that she was sitting behind the driver of the ATV. Defendant's expert witness, William Fisher, testified that the victim was the operator of the ATV and that defendant was the passenger seated behind the victim. Fisher opined that several of the victim's injuries were caused by contact with the ATV and further noted that the wet portion on the back of the victim's jeans could be explained by her having been a passenger at some earlier time. Fisher also acknowledged that his analysis of the accident was based on the observation of the scene in 2016, a year after the accident occurred.
A different verdict would not have been unreasonable in light of the victim's request to drive the ATV and Fisher's opinion that she was the operator at the time of the accident. However, viewing the evidence in a neutral light and according deference to the jury's credibility determinations, we conclude that there is ample evidence to support the jury's conclusion that defendant was operating the vehicle at the time of the accident and, therefore, the verdict on the relevant counts was not against the weight of the evidence.[FN2]
Defendant contends that his convictions under counts 3, 4, 5, 6 and 7 must be dismissed as inclusory concurrent counts of the conviction of vehicular manslaughter in the first degree under count 2 (see CPL 300.40 [3] [b]). "Concurrent counts are 'inclusory' when the offense charged in one is greater than any of those charged in the others and when the latter are all lesser offenses included within the greater" (CPL 300.30 [4]). The People concede that defendant's conviction of vehicular manslaughter in the first degree under count 2 requires that counts 3, 4, 6 and 7 be dismissed as inclusory concurrent counts. However, they accurately note that count 5 — charging aggravated driving while intoxicated — is not an inclusory concurrent count of vehicular manslaughter in the first degree as charged pursuant to Penal Law § 125.13 (3) in count 2 because it is possible to commit the latter without also committing the former (see Vehicle and Traffic Law § 1192 [2-a] [a]; Penal Law § 125.13 [1]; People v Madison, 148 AD3d 1289, 1291 [2017], lvs denied 29 NY3d 1130, 1135 [2017]).
We are unpersuaded by defendant's contention that County Court erred by failing to suppress statements that he made to Kitts while in the hospital prior to receiving Miranda warnings. "A defendant is subjected to custodial interrogation, triggering his or her rights under Miranda, when a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave. Factors to be taken into account in this analysis include the location, length and atmosphere of the questioning, whether police significantly restricted defendant's freedom of action, the degree of defendant's cooperation, and whether the questioning was accusatory or investigatory. A court's determination that a defendant was not in custody is accorded great weight and will not be disturbed unless clearly erroneous" (People v Jeremiah, 147 AD3d 1199, 1200 [2017] [internal quotation marks, brackets and citations omitted], lvs denied 29 NY3d 1031, 1033 [2017]).
Defendant was not handcuffed or otherwise restrained while being questioned by Kitts before the Miranda warnings were given to defendant. Kitts allowed medical staff to treat [*4]defendant, and he did not coerce or threaten defendant in any way while asking investigatory questions. As noted by County Court, it is common knowledge that the police prepare reports regarding motor vehicle accidents even when no criminal conduct is suspected. Under these circumstances, we conclude that a reasonable person innocent of any wrongdoing would not have felt that he or she was in custody when asked questions about the accident while receiving treatment at the hospital in the immediate aftermath of the accident and, therefore, County Court properly denied defendant's suppression motion (see People v Carbonaro, 134 AD3d 1543, 1547 [2015], lv denied 27 NY3d 994 [2016]; People v Ripic, 182 AD2d 226, 235-236 [1992], appeal dismissed 81 NY2d 776 [1993]; see also People v Diallo, 137 AD3d 1681, 1681 [2016]; People v Gore, 117 AD3d 845, 846 [2014], lv denied 24 NY3d 1084 [2014]).
Defendant further argues that he was deprived of a fair trial by admission of the recording of the initial 911 call made by Snedeker and by Kitts' testimony that the ATV was uninsured. The recording of a 911 call that is offered for the truth of the matter asserted is hearsay, but may be admitted under either the excited utterance or present sense impression exceptions to the hearsay rule (see People v Coleman, 151 AD3d 1385, 1387 [2017], lv denied 29 NY3d 1125 [2017]). The present sense impression hearsay exception "allows the admission of spontaneous descriptions of events made substantially contemporaneously with the observations if the descriptions are sufficiently corroborated by other evidence" (People v Jones, 28 NY3d 1037, 1039 [2016] [internal quotation marks, ellipsis and citation omitted]; People v Barnes, 64 AD3d 890, 892 [2009], lv denied 13 NY3d 858 [2009]). In the 911 call, Snedeker spontaneously described events at the scene of the accident as they were unfolding, and her description was sufficiently corroborated by her direct testimony and the testimony of Sherman, David Winney and Teresa Winney. Her reference to the victim as having been the passenger was corroborated by her direct testimony, Hodgson's testimony and the statements that defendant made to Kitts. We further conclude that any potential prejudice to defendant from Kitts' comment that the ATV was uninsured was ameliorated by County Court sustaining defendant's objection and immediately providing a curative instruction directing the jury to disregard that testimony (see People v Delaney, 42 AD3d 820, 822 [2007], lv denied 9 NY3d 922 [2007]; People v Garcia, 33 AD3d 1050, 1051 [2006], lv denied 9 NY3d 844 [2007]).
Defendant further argues that he was deprived of the effective assistance of counsel to the extent that any of the issues that he raises on appeal were unpreserved. He concedes that he otherwise received the effective assistance of counsel by acknowledging that his trial counsel made cogent opening and closing statements, effectively cross-examined the People's witnesses and offered persuasive expert testimony. Inasmuch as we have considered the issues that defendant raised on appeal on their merits, his argument that he did not receive the effective assistance of counsel is unavailing (see People v Barnes, 64 AD3d at 893).
Lastly, we reject defendant's arguments that the sentence imposed was harsh and excessive. "While the sentence imposed was greater than that offered to defendant during plea negotiations, there is nothing in the record establishing that he was punished for asserting his right to trial or that the lengthier sentence ultimately imposed was the result of vindictiveness or retaliation" (People v Alexander, 160 AD3d 1121, 1124 [2018] [citation omitted], lv denied 31 NY3d 1144 [2018]; see People v Thomas, 155 AD3d 1120, 1124 [2017], lv denied 31 NY3d 1018 [2018]). Although County Court imposed the maximum allowable prison sentence for the vehicular manslaughter conviction, we find no abuse of discretion or extraordinary circumstances that warrant a modification of defendant's sentence in light of his extreme level of intoxication, his prior convictions for intoxicated driving offenses and his complete lack of remorse (see People v Olsen, 124 AD3d 1084, 1087 [2015], lv denied 26 NY3d 933 [2015]; People v Warner, 9 AD3d 604, 604 [2004]). Defendant's remaining arguments have been considered and found to lack merit.
Garry, P.J., Egan Jr., Lynch and Clark, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, by reversing defendant's convictions of vehicular manslaughter in the first degree, vehicular manslaughter in [*5]the second degree and driving while intoxicated under counts 1, 3, 4, 6 and 7 of the indictment; said counts dismissed and the sentences imposed thereon vacated; and, as so modified, affirmed.



Footnotes

Footnote 1: As the People note, this conclusion leads to the anomalous result that a person who commits vehicular manslaughter in the second degree while operating an ATV cannot be convicted of vehicular manslaughter in the first degree for conduct that would support such a conviction if he or she had been operating an automobile, i.e., for operating the ATV with a BAC of greater than .18% or more by weight or for causing the death of a passenger who is 15 years of age or less (see Penal Law § 125.13 [1], [6]). In light of the clear statutory language and framework, this concern must be addressed to the Legislature.

Footnote 2: Based on our dismissal of count 1 and our determination regarding inclusory concurrent counts (infra), we need only consider whether the convictions for vehicular manslaughter in the first degree under count 2 and aggravated driving while intoxicated under count 5 were supported by the weight of the evidence. The remaining elements of both of these counts were established by the uncontroverted evidence that defendant had a BAC of .19% at the time of the accident and, further, that he had previously been convicted for driving while intoxicated within the past 10 years (see Penal Law §§ 125.12 [3]; 125.13 [3]; Vehicle and Traffic Law § 1192 [2-a] [a]).